```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CAPGEMINI U.S. LLC, individually    :
and as assignee of claims of
certain contractors of EC Manage    :
Inc., and CAPGEMINI APPLICATIONS
SERVICES LLC,                       :

                   Plaintiffs,      :    10 Civ. 2486 (GBD)(HBP)

        -against-                   :    REPORT AND
                                         RECOMMENDATION
EC MANAGE INC. and                  :
TPX GLOBAL CORPORATION
                                    :
                   Defendants.
                                    :
----------------------------------X
```

       PITMAN, United States Magistrate Judge:

       TO THE HONORABLE GEORGE B. DANIELS, United States District Judge,

## I.   Introduction

       On October 13, 2010, the Honorable George B. Daniels, United States District Judge, referred this matter to me to conduct an inquest concerning plaintiffs' damages in connection with their claims against defendants EC Manage Inc. ("EC Manage") and TPX Global Corporation ("TPX Global") (Docket Item 12).  The inquest was ordered as a result of Judge Daniels's Order dated

October 13, 2010 noting defendants' default in this case (Docket
Item 13).

        Pursuant to the Order of Reference in this case, I
issued a Scheduling Order on November 5, 2010 directing plain-
tiffs to serve and file proposed findings of fact and conclusions
of law, along with evidentiary materials supporting their claim
for damages, by January 11, 2011 (Docket Item 15 at ¶ 1).  My
November 5, 2010 Scheduling Order further directed defendant to
submit responsive materials by February 11, 2011.  Specifically,
my Order provided:

>         Defendants shall submit their response to Plain-
> tiff's submission, if any, no later than February 11,
> 2011.  IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S
> SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY
> FEBRUARY 11, 2011 AND REQUEST AN IN-COURT HEARING, IT
> IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION
> CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN
> SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.  See
> Transatlantic Marine Claims Agency, Inc. v. Ace Ship-
> ping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v.
> ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir.
> 1989) ("[I]t [is] not necessary for the District Court
> to hold a hearing, as long as it ensured that there was
> a basis for the damages specified in a default judg-
> ment.").

(Docket Item 15 at ¶ 2) (emphasis in original).

        On December 17, 2010, plaintiffs timely filed a
document entitled "Plaintiff's Proposed Findings of Fact and
Conclusions of Law for Damages on a Default Judgment" along with
supporting evidentiary material (Plaintiff's Proposed Findings of

Fact and Conclusions of Law for Damages on a Default Judgment, dated December 14, 2010 (undocketed)("Pls' Proposed Findings")). Defendants have not made any written submission to me, nor have they contacted my chambers in any way.  Since all reasonable steps to provide notice to defendants have been taken, I make the following findings of fact and conclusions of law on the basis of plaintiffs' submissions alone.

II.  Findings of Fact

    A.  The Parties

       1.  Plaintiff Capgemini U.S. is a Delaware limited liability company with its principal place of business located at 623 Fifth Avenue, New York, New York 10022 (Complaint, filed March 18, 2010 (Docket Item 1)("Compl."), at ¶ 2).[1]

       2.  Plaintiff Capgemini Applications Services (collectively with Capgemini U.S., "Capgemini") is a Delaware

---

[1] As a result of defendants' default, all the allegations of the Complaint, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Robinson v. Sanctuary Record Groups, Ltd., 542 F.Supp. 2d 284, 289 (S.D.N.Y. 2008) (Marrero, D.J.); Wing v. East River Chinese Rest., 884 F.Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F.Supp. 956, 959 (S.D.N.Y. 1986) (Conner, D.J.).

limited liability company whose "sole member" is Capgemini U.S. (Compl. ¶ 3).

3.  Defendant EC Manage is a California corporation with its principal place of business located at 3155 Kearney Street, Suite 170, Freemont, California 94538 (Compl. ¶ 4).

4.  Defendant TPX Global is a California corporation with its principal place of business located at 3155 Kearney Street, Suite 170, Freemont, California 94538 (Compl. ¶ 5).

B.  Facts Relating to
    the Agreement

5.  In October 2007, Capgemini and EC Manage entered into an agreement ("Agreement"), under which EC Manage would provide consultants to Capgemini to perform services for Capgemini and its clients (Compl. ¶ 10; Agency Agreement, dated October 1, 2007 ("Agreement"), annexed as Exhibit A to Affidavit of Arvind Kumar, dated November 1, 2010 ("Kumar Aff.")).

6.  Under the Agreement, Capgemini would pay EC Manage for the consultants' time and expenses, and EC Manage would then pay the wages of the consultants (Compl. ¶ 11; Agreement art. 3, 7).

7.  The Agreement provided that EC Manage would "indem-nify, defend, and hold harmless Capgemini and its affiliates from

all claims, losses, liabilities, costs and expenses arising from breach of the foregoing obligations or which relate to the employment status of Consultants or any compensation or benefits due to Consultations," and also provided that EC Manage would indemnify Capgemini "against any and all suits, causes of action, proceedings, loss, damage, liability or expense, including defense costs and legal fees, and claims of any nature, arising out of or resulting from . . . any breach by [EC Manage] of any of the terms, obligations, representations or warranties contained in this Agreement" (Compl. ¶¶ 12-13; Agreement art. 11).

8.   Plaintiffs paid EC Manage for the consultants' time and expenses (Compl. ¶ 14).

9.   In October 2009, consultants provided by EC Manage began to complain to Capgemini and its clients that their wages were not being paid by EC Manage (Compl. ¶ 15).

10.   EC Manage admitted to Capgemini that they were not paying the consultants' wages due to financial issues. Capgemini demanded that EC Manage release the consultants so that they could be transferred to another staffing agency, and to reaffirm its obligation to pay the consultants' wages for work that Capgemini had already paid EC Manage for. Capgemini and EC Manage entered into a letter agreement, dated December 2, 2009, which provided as follows:

> Due to EC Manage's failure to make prompt payment to
> some of Capgemini's resources, EC Manage agrees to
> release the resources listed on the attached Exhibit A
> from their respective contracts with EC Manage so that
> Capgemini can extend to such resources the option of
> working with Capgemini through another staffing organi-
> zation.  EC Manage agrees that any monies paid by
> Capgemini to EC Manage for resources on Capgemini
> assignments will be paid in accordance with the terms
> of resources' agreements with EC Manage.

(Compl. ¶¶ 16-17; Letter to Mr. Rabi Chakraborty, dated December 2, 2009 ("Letter Agreement"), annexed as Exhibit B to Kumar Aff.).

11.   Despite the Letter Agreement, EC Manage continued to fail to pay the consultants, even though Capgemini had paid EC Manage for their services.  The consultants' complaints to Capgemini's clients persisted, harming Capgemini's client rela-tionships and business reputation.  The loss of the consultants, who were knowledgeable, would have been detrimental to Capgemini and its clients (Compl. ¶ 18).

12.   Capgemini again demanded that EC Manage honor its obligation under the Agreement to pay the consultants' wages in a letter dated December 17, 2009 (Compl. ¶ 19; Letter to Mr. Rabi Chakraborty, dated December 17, 2009, annexed as Exhibit C to Kumar Aff., at 1-2).

13.   EC Manage, still having not paid the consultants' wages, began to falsely inform the consultants that their wages

were being withheld because Capgemini had not yet paid EC Manage. These false assertions caused further harm to Capgemini, as the consultants continued to complain to Capgemini's management and clients (Compl. ¶ 20).

14.   To mitigate its damages and retain the talents of the consultants, Capgemini began to pay the wages of the now-former EC Manage consultants directly, despite the fact that Capgemini had already paid EC Manage for the consultants' services (Compl. ¶ 21).

15.   In exchange for the direct payments of wages from Capgemini, the consultants agreed to assign their claims for unpaid wages against EC Manage to Capgemini.  Thus, in this action, Capgemini asserts claims against EC Manage in its own right and as the assignee of the consultants (Compl. ¶ 22).

16.   Capgemini fully performed all of its obligations under the Agreement (Compl. ¶ 24).

17.   Capgemini U.S. has expended $481,819.21, and Capgemini Applications Services has expended $857,032.93, for a total amount of $1,338,582.10, in direct payments to former EC Manage consultants (Pls' Proposed Findings ¶ 12; Exhibits D and E to Kumar Aff.).

C.    The Formation of
      <u>TPX Global</u>

18.   In October 2009, TPX Global was formed, and began operating out of the same office as EC Manage (Compl. ¶ 34).

19.   TPX Global operates on a business model virtually identical to that of EC Manage, and even states on its website that it "shares in the 10-year rich industry experience of EC-Manage, Inc. in the managed staffing services business catering to leading clients all over the US" (Compl. ¶¶ 37-38, Exhibit D at 1-2).

20.   EC Manage's website is no longer accessible (Compl. ¶ 39).

21.   EC Manage and TPX Global share common ownership, officers, directors and/or management, and the principals of EC Manage currently operate the staffing business through TPX Global instead of EC Manage (Compl. ¶¶ 40-41).

III.  <u>Conclusions of Law</u>

A.   <u>Jurisdiction and Venue</u>

22.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 on the basis of diver-

sity of citizenship.  The amount in controversy exceeds $75,000 exclusive of interest.

23.  This Court has personal jurisdiction over EC Manage by virtue of its consent to this Court's jurisdiction in the Agreement (Agreement art. 13(I)).  Alternatively, this Court has personal jurisdiction over EC Manage pursuant to New York C.P.L.R. Section 302(a)(1) (Compl. ¶ 8).

24.  This Court has personal jurisdiction over TPX Global as a successor in interest to EC Manage.  Alternatively, this Court has personal jurisdiction over TPX Global pursuant to New York C.P.L.R. Section 302(a)(1) (Compl. ¶ 9).

25.  Venue is proper in this District by virtue of EC Manage's consent in the Agreement (Agreement art. 13(I)).  Alternatively, venue is proper because both EC Manage and TPX Global are subject to jurisdiction in this District.  28 U.S.C. § 1391(b), (c).

B.  <u>Choice of Law</u>

26.  A federal court sitting in diversity must apply the law of the state in which it sits, including the state's choice of law rules.  <u>Klaxon Co. v. Stentor Elec. Mfg., Co.</u>, 313 U.S. 487, 496-97 (1941); <u>Forest Park Pictures v. Universal Television Network, Inc.</u>, 683 F.3d 424, 433 (2d Cir. 2012).

Here, the Agreement expressly designated that it would be governed by New York law, without regard to New York's choice of law rules (Agreement art. 13(G)).  Because (1) choice of law clauses are routinely enforced by New York courts, and (2) Capgemini's New York citizenship provides a sufficient New York nexus to the transaction, I shall apply New York law to plaintiffs' claims. See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000)("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."); Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("New York courts generally accord deference to choice-of-law provisions in contracts.").

    C.   Breach of Contract

      27.  Establishing "a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011); citing First Investors Corp. v. Liberty Mut. Ins.

<u>Co.</u>, 152 F.3d 162, 168 (2d Cir. 1998) <u>and</u> <u>Harsco Corp. v. Sequi</u>, 91 F.3d 337, 348 (2d Cir. 1996).

      28.  "[The] doctrine [of expectation damages] gives force to the provisions of a contract by placing the aggrieved party in the same economic position it would have been in had both parties fully performed." <u>Bausch & Lomb Inc. v. Bressler</u>, 977 F.2d 720, 728-29 (2d Cir. 1992).  "As a general rule, damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant ful-filled the contract." <u>House of Diamonds v. Borgioni</u>, LLC, 737 F. Supp. 2d 162, 172 (S.D.N.Y. 2010) (Ellis, M.J.)(internal quota-tion marks omitted).

      29.  EC Manage materially breached the Agreement with Capgemini by failing to pay the consultants, even after Capgemini had already performed under the Agreement by paying EC Manage for the consultants' services.

      30.  As a result of EC Manage's breach of the Agree-ment, Capgmini has been forced to expend funds to pay the consultants directly to avoid any disruption to its business.

      31.  EC Manage's breach has deprived Capgemini of the benefit of the bargain, and has resulted in damages to Capgemini.

      32.  In their Proposed Findings, plaintiffs request "damages in the amount of $1,338,852.10" (Pls' Proposed Findings

at 6).  In the Complaint, however, plaintiffs do not specify the precise amount of damages sought.  In one instance, plaintiffs claim to have expended "in excess of $600,000 in payments to former EC Manage consultants" (Compl. ¶ 21).  In the ad damnum clause, plaintiffs demand "an amount to be determined at trial, but not less than $1,000,000" (Compl. at 9).

        33.  Rule 54(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed.R.Civ.P. 54(c).  Rule 54(c) is based on the principle that:

>   "[T]he defending party should be able to decide on the
>   basis of the relief requested in the original pleading
>   whether to expend the time, effort, and money necessary
>   to defend the action.  It would be fundamentally unfair
>   to have the complaint lead defendant to believe that
>   only a certain type and dimension of relief was being
>   sought and then, should defendant attempt to limit the
>   scope and size of the potential judgment by not
>   appearing and otherwise defaulting, allow the court to
>   give a different type of relief or a larger damage
>   award."

Silge v. Merz, 510 F.3d 157, 159 (2d Cir. 2007), quoting 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2663 (3d ed. 1998) (footnote omitted). Based on the foregoing, plaintiffs' request in their Proposed Findings for $1,338,852.10 in damages should be denied.  See Silge v. Merz, supra, 510 F.3d 157, 160-62; see also Guanghong

Int'l (HK) Ltd. v. Ultimate Fin. Solutions LLC, 11 Civ. 4019
(RMB)(KNF), 2012 WL 1228085 at *6 (S.D.N.Y. Mar. 26, 2012) (Fox,
M.J.) (Report & Recommendation), adopted at, 2012 WL 2402902
(S.D.N.Y. June 26, 2012) (Berman, D.J.); Leisure Direct, Inc. v.
Glendale Capital, LLC, 05-CV-4473 (KAM)(JO), 2010 WL 3782049 at
*5-*6 (E.D.N.Y. July 27, 2010) (Report & Recommendation), adopted
at, 2010 WL 3782042 (E.D.N.Y. Sept. 20, 2010); RLI Ins. Co. v.
King Sha Grp., 598 F. Supp. 2d 438, 446 (S.D.N.Y. 2009) (Kaplan,
D.J.).

      34.  Despite the Complaint's lack of specificity as to
damages, I conclude that plaintiffs should be awarded a judgment
of $1,000,000 against defendants.  This amount is supported with
reasonable certainty by the documentary evidence submitted by
plaintiffs in support of their Proposed Findings, which includes
several tables showing that Capgemini paid in excess of
$1,000,000 in wages to EC Manage consultants after having already
paid EC Manage for the consultants' services (Exhibits D and E to
Kumar Aff.).  This amount is also in accord with the purposes of
Rule 54(c), because the Complaint clearly states that plaintiffs
are seeking damages of "not less than $1,000,000," thereby
putting defendants on notice that at least this amount was at
stake.  See Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 10
Civ. 9250 (DAB), 2012 WL 3194968 *14 n.14 (S.D.N.Y. Aug. 7, 2012)

(Batts, D.J)(adopting Report & Recommendation of Pitman,
M.J.)("If plaintiff was seeking more than [the monetary amount
alleged in the complaint], it could have, and should have,
specified this.")

    D.   <u>Interest</u>

    35.  In their Complaint, plaintiffs demand "an amount
to be determined at trial, but not less than $1,000,000, <u>plus</u>
<u>interest</u> and costs of collection . . ." (Compl. at 9 (emphasis
added)).  Similarly, in their Proposed Findings, plaintiffs state
that they are "entitled to recover the unpaid amount due under
the contract <u>plus interest</u>" (Pls' Proposed Findings at 4, <u>quoting</u>
<u>House of Diamonds v. Borgioni, LLC</u>, <u>supra</u>, 737 F. Supp. 2d at 172
(S.D.N.Y. 2010)(emphasis added)).  In neither instance to the
plaintiffs specify whether they are referring to pre- or post-
judgment interest.

    36.  In <u>Silge v. Merz</u>, <u>supra</u>, the Second Circuit,
relying on Rule 54(c), declined to award pre-judgment interest,
after a default, in a breach of contract and <u>quantum</u> <u>meruit</u> case
where the complaint did not include any demand for pre-judgment
interest.  <u>Silge v. Merz</u>, <u>supra</u>, 510 F.3d 157, 162 (2d Cir.
2007).  Here, however, plaintiffs included a demand for "inter-
est" in their Complaint, which can include both pre- and post-

judgment interest.  The plaintiffs further made it clear, by
employing the phrase "plus interest," that the interest was not a
component of the minimum of $1,000,000 in damages demanded
(Compl. at 9).  Accordingly, since the Complaint put the defen-
dants on notice that they could be liable for an amount in excess
of $1,000,000 once interest was computed, an award of interest at
this stage would not "differ in kind from, or exceed in amount"
demanded in the Complaint.  Fed.R.Civ.P. 54(c); See DLJ Mortg.
Capital, Inc. v. E. Am. Mortg. Co., 07 Civ. 7933 (PKL)(DFE), 2009
WL 1835025 at *5 (S.D.N.Y. June 24, 2009) (Leisure,
D.J.)(adopting Report and Recommendation of Eaton, M.J.) (com-
plaint "gave [] adequate notice under Rule 54(c) that default
judgment would lead to 9% prejudgment interest" where, inter
alia, it demanded "an amount not less than $318,898.10, plus
penalties and interest"); Mohan v. La Rue Distribs., Inc., CV
06-0621 FB (RLM), 2008 WL 4822266 at *2-*4 (E.D.N.Y. Oct. 27,
2008).

      37.  "Under New York law . . . a plaintiff who prevails
on a claim for breach of contract is entitled to prejudgment
interest as a matter of right."  U.S. Naval Inst. v. Charter
Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991).

15

38.   Because EC Manage breached the Agreement with Capgemini by failing to pay the consultants' wages, Capgemini is entitled to prejudgment interest.

39.   "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred.  Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  New York C.P.L.R. § 5001(b); see also Conway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) ("[W]here damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest.").  Interest is calculated on a simple interest basis at the statutory rate of nine percent per year.  Marfia v. T .C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998).

40.   Because it is unclear exactly when Capgemini began to directly pay the wages of the consultants, I conclude that the most reasonable date from which to award prejudgment interest is March 18, 2010, the date the Complaint was filed.  See Conway v. Icahn & Co., Inc., supra, 16 F.3d at 512, citing Cotazino v.

16

<u>Basil Dev. Corp.</u>, 167 A.D.2d 632, 635 562 N.Y.S.2d 988, 991

(1990)(finding commencement date "reasonable intermediate date").

   E. De Facto Merger and
     <u>Successor Liability</u>

   41. "The de facto merger doctrine creates successor

liability when the transaction between the purchasing and selling

companies is in substance, if not in form, a merger." <u>New York</u>

<u>v. Nat'l Serv. Indus., Inc.</u>, 460 F.3d 201, 205 (2d Cir. 2006);

<u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, 45 (2d Cir.

2003). Courts consider the following factors in determining

whether a <u>de</u> <u>facto</u> merger has occurred: "(1) continuity of

ownership; (2) cessation of ordinary business and dissolution of

the acquired corporation as soon as possible; (3) assumption by

the purchaser of the liabilities ordinarily necessary for the

uninterrupted continuation of the business of the acquired

corporation; and (4) continuity of management, personnel, physi-

cal location, assets, and general business operation." <u>New York</u>

<u>v. Nat'l Serv. Indus.</u>, <u>supra</u>, 460 F.3d at 209; <u>accord</u> <u>Cargo</u>

<u>Partner AG v. Albatrans, Inc.</u>, <u>supra</u>, 352 F.3d at 46; <u>Barrack,</u>

<u>Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.</u>, 08 Civ.

02152 (PKL), 2008 WL 759353 at *7 (S.D.N.Y. Mar. 20, 2008)

(Leisure, D.J.). Except for the first factor, "[n]ot all of

these elements are necessary to find a de facto merger." <u>Cargo Partner AG v. Albatrans, Inc.</u>, <u>supra</u>, 352 F.3d at 46, <u>citing</u> <u>Fitzgerald v. Fahnestock & Co.</u>, 286 A.D.2d 573, 574-75, 730 N.Y.S.2d 70, 71 (1st Dep't 2001); <u>TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc.</u>, 03 Civ. 0517 (GBD), 2005 WL 476663 at *3 (S.D.N.Y. Feb. 28, 2005) (Daniels, D.J.).  Indeed, "the Court should consider the factors 'in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor.'" <u>Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.</u>, <u>supra</u>, 2008 WL 759353 at *7, <u>quoting</u> <u>AT&S Transp., LLC v. Odyssey Logistics & Tech. Corp.</u>, 803 N.Y.S.2d 118, 119, 22 A.D.3d 750, 752 (2d Dep't 2005).  Nevertheless, the first factor -- continuity of ownership -- is essential to a finding of a <u>de facto</u> merger.  <u>New York v. Nat'l Serv. Indus.</u>, <u>supra</u>, 460 F.3d at 214; <u>Cargo Partner AG v. Albatrans, Inc.</u>, <u>supra</u>, 352 F.3d at 46; <u>see also</u> <u>Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.</u>, <u>supra</u>, 2008 WL 759353 at *8; <u>Colon v. Multi-Pak Corp.</u>, 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (Sweet, D.J.); <u>In re New York City Asbestos Litig.</u>, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 487 (1st Dep't 2005) ("[B]ecause continuity of ownership is the essence of a merger, it is a necessary element

18

of any de facto merger finding . . . .") (internal quotation marks omitted).

        42.  In light of the continuity of ownership between EC Manage and TPX Global, the cessation of EC Manage's business, and the apparent continuity of management, physical location, and general business model, I conclude that a de facto merger has occurred between EC Manage and TPX Global.  Thus, TPX Global is liable as a successor for claims against EC Manage.

## IV.  Conclusions

        For all the foregoing reasons, I respectfully recommend that the Court award plaintiffs damages against defendants EC Manage and TPX Global in the amount of $1,000,000, with prejudgment interest of nine percent per annum calculated from March 18, 2010 until the entry of judgment.

## V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable

George B. Daniels, United States District Judge, 500 Pearl Street, Room 1310, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        November 7, 2012

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Gerald D. Silver, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112

Mr. Rabi Chakraborty
Chief Executive Officer
EC Manage, Inc.
3155 Kearney Street
Suite 170
Fremont, California   94538

Mr. Rabi Chakraborty
Chief Executive Officer
TPX Global Corporation
3155 Kearney Street
Suite 170
Fremont, California   94538